# City Court.

*Trial Term—February,* 1887.

## GEORGE BURCHILL, et al., *against* EDWARD RAFTER.

The plaintiffs, who are real estate brokers, were employed by the defendant to find a customer for a valuable lease held by him. His

Burchill *v.* Rafter.

equity was large and was to be paid for in cash or secured by "real estate security." *Held,* that the term "real estate security" meant by mortgage on real estate, and that a bond by a real estate owner was insufficient.

*Further,* that the brokers, not having found a person willing to secure the equity by mortgage on real estate, were not entitled to brokerage.

Trial by the court without a jury.

*Earley & Pendergast,* for plaintiffs.

*J. M. Fitzsimons,* for defendant.

McAdam, Ch. J.—In the spring of 1886, the defendant held a lease of the store on the south-east corner of One Hundred and Twentieth street and Third avenue, which had a little over nine years to run. The rent reserved in it was $2,000 per year. It was a valuable lease. It was purchased by the defendant for $4,800 and he was offered $1,800 for his bargain. The plaintiffs as brokers were employed by the defendant in respect to the lease, and the only question in dispute is as to the terms and conditions of that employment. The brokers found Mallon & Becannon persons willing to take the premises at $3,500 per year, a price satisfactory to the defendant.

A question then arose whether Mallon & Becannon should take a sub-lease or an assignment of the one held by the defendant. It was finally assumed and tacitly agreed that a sub-lease could not be made, on account of a covenant against sub-letting contained in the lease, and that an assignment of the original term would be necessary.

This proved agreeable to all parties, and the transaction fell through solely because of the refusal by Mallon & Becannon to give security for the defendant's equity in the lease, in the form of a lien on real estate.

The defendant's equity in the lease would be the difference between $2,000, the rent reserved by the original lease, and $3,500, the sum agreed to be paid by the

new arrangement offered by Mallon & Becannon. This difference of $1,500 for nine years would aggregate $13,500 for the term—quite an item.

The defendant did not want to part with his property, reserving no control over it, without good security that his equity would be forthcoming. He was willing to take it in installments, the same as the rent was payable, or he would take a sum in gross and end his part of the transaction. The installment plan was agreeable to all, but the paid-up plan did not suit Mallon & Becannon. It was an unusual proposition and they were justified in declining it.

The installment plan, however, was satisfactory, and if the security by real estate lien had been given, the transaction would have been consummated.

The security plan of " lien " on real estate, was unusual, but not more so than the transaction itself.

Mallon & Becannon offered to give " James Everard," the brewer, as security. He was a man of character, of responsibility, and a real estate owner. He was acceptable to the defendant, who insisted, however, on having Everard give him a mortgage on some real estate to make the payments sure ; the defendant remarking that a person good to-day may not be as satisfactory nine years afterwards.

The conditions were severe ; but if the plaintiffs assented to them at the time of their employment, they cannot recover without proving that the persons they procured were willing to comply with them. Burchill, one of the plaintiffs, admits all through his testimony that the employment was conditional on obtaining "real estate security " for the rent ($3,500 per year), but contended that this condition was satisfied by furnishing a responsible real estate owner to go on a bond for the security of the money. The term has acquired that meaning in connection with certain "bail bonds," but is not necessarily so restricted in its general application.

Burchill *v.* Rafter.

The testimony of the defendant and of Mr. Fitzsimons (a reputable and disinterested witness) shows that the defendant did not use the words in the limited sense given to them by Burchill. The defendant testifies that he said "mortgage lien on real estate," and the testimony of Mr. Fitzsimons shows that he emphasized upon this point in minute detail. This understanding of the term by the defendant was evidently not an after-thought, for he was emphatic on that point and not unreasonable in regard to the security so long as it was on real estate.

He offered to take a second mortgage, and was willing to take one from each of the proposed customers for half the amount, if agreeable to them. The term "real estate security," within the sense in which that term was used by the defendant in employing the plaintiffs, was "real estate security by lien thereon," and if the plaintiffs did not so understand it, the minds of the parties did not meet in regard to the employment, and, as the efforts of the plaintiffs did not result in consummating the transaction upon which they were engaged, there can be no recovery. The plaintiffs evidently did all they could to bring about a result, and it is unfortunate for them that it was not reached; but the rule is settled that no matter how much time a broker spends or what expense he incurs, he is without redress unless he consummates the object of his employment according to its terms.

Under the circumstances, there must be judgment for the defendant, with costs, but without any allowance in addition thereto.